UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| DONGGUAN MEISHIDA E-COMMERCE CO., LTD. d/b/a JEEVONY, | ) ) | |
| | ) | 2:25-CV-00106-DCLC-CRW |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN PATRICK KELLEY and MAGVENT, LLC, | ) ) | |
| | ) | |
| Defendant/Counterclaim Plaintiffs. | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Jeevony's Motion to Dismiss Defendant's Counterclaim and Strike Defendant's Affirmative Defenses [Doc. 34]. This matter is fully briefed and is ripe for consideration. For the following reasons, the motion is **GRANTED IN PART** as to the third affirmative defense and **DENIED IN PART** as to Kelley's counterclaim and first and second affirmative defenses.

## I. BACKGROUND

### A. The '855 Patent

Defendant Kelley is the owner of U.S. Patent No. 11,634,855 ("the '855 Patent"), issued by the United States Patent and Trademark Office on April 25, 2023.[1] [Doc. 28, ¶ 10]. His invention is the "Magnetically Positioned and Engaged Dryer Vent Attachment and Method," which contains two magnets, one in a mounted substrate at the end of a dryer exhaust duct, and one in a second mounted substrate that attaches to a wall. This product allows for the easy installation of a clothes dryer where the exhaust duct connects to a wall vent as the two magnets

---

[1] MagVent, LLC is the exclusive licensee of the '855 Patent.

readily align themselves when placed together.

The '855 Patent contains two independent claims, 1 and 10. [*Id.* ¶ 29]. With emphasis added to highlight the claim limitation at issue in the motion to dismiss, claim 1 recites:

1. A magnetically positioned dryer vent coupling adapted for use in combination with a clothes dryer, comprising:

a flexible exhaust duct having a first end adapted for communicating with an exhaust port of the clothes dryer and a second end adapted for communicating with a wall port adjacent the clothes dryer;

a first mounting substrate located at one end of said flexible exhaust duct and comprising a first magnet, said first mounting substrate defining a center opening having an annular inner peripheral edge forming an annular inner perimeter of said first mounting substrate and an annular outer peripheral edge forming an annular outer perimeter of said first mounting substrate, and wherein said first magnet resides between said inner and outer peripheral edges and produces a magnetic field having one of a north or south outward-facing polarity pointed away from said exhaust duct;

a second mounting substrate adapted for locating proximate one of the dryer exhaust port and wall port and comprising a second magnet, said second mounting substrate defining a center opening having an annular inner peripheral edge forming an annular inner perimeter of said second mounting substrate and an annular outer peripheral edge forming an annular outer perimeter of said second mounting substrate, and wherein said second magnet resides between said inner and outer peripheral edges and produces a magnetic field having an outwardfacing polarity opposite the outward-facing polarity of said first magnet; and

**said first and second mounting substrates comprising respective complementary surfaces configured to nest together between said inner and outer perimeters, said complementary surfaces configured to nest together at any orientation** upon magnetic attraction of said first and second magnets with said annular inner peripheral edges of said first and second mounting substrates substantially aligned, such that said annular inner perimeters of said first and second mounting substrates cooperate to form an unobstructed sealed annular opening through which dryer exhaust passes;

whereby when moved into close proximity, said first and second magnets magnetically attract to one another to self-align and self-assemble said first and second mounting substrates of said dryer vent coupling, such that said first and second magnets create an audible snapping sound when engaged thereby indicating a close magnetic seal at said dryer vent coupling.

2

[*Id.* ¶ 15]. Independent claim 10 is substantially the same as claim 1, with the addition of the preamble "A clothes dryer, comprising." [*Id.* ¶ 28].

### B. The Patent Prosecution History

The '855 Patent was not Kelley's first patent application for magnetic dryer vent attachments. His first application, 12/804,691, included a claim limitation for "smooth magnetic surface areas between inner and outer perimeters of said first and second mounting substrates engage and form a flush magnetic seal," but did not include the complimentary, nesting limitation present in the '855 Patent. [Doc. 39, pgs. 8-9]. That application was rejected by the USPTO in light of the application's similarity to the prior art publications to Pichotta and Irey. [Doc. 34, Ex. 2, A-0036].[2]

Kelley followed this rejection with application 15/825,998 that added a new claim for "respective complementary outwardly protruding and inwardly recessed surfaces extending between said inner and outer perimeters, said complementary protruding and recessed surfaces adapted to nest together upon magnetic attraction." [Doc. 34, Ex. 3, A-0347-48]. The USPTO again rejected Kelley's application in consideration of Pichotta and other art. [*Id.*, A-0334].

To traverse this rejection, Kelley amended the claim with an additional limitation stating, "said complementary protruding and recessed surfaces adapted to nest together at any orientation upon magnetic attraction … such that said annular inner perimeters of said first and second mounting substrates cooperate to form an unobstructed sealed annular opening through which dryer exhaust passes." [*Id.*, A-0252]. This application was approved.

In the subsequent continuation patent application which resulted in the '855 Patent, the

---

[2] Pichotta discloses a magnetically positioned dryer vent coupling equivalent to a magnet and a metal plate, and Irey discloses a dryer vent coupling with smooth magnetic surface areas to form a flush magnetic seal. [*Id.*, A-0054-55].

limitation requiring "outwardly protruding and inwardly recessed surfaces" was removed. [Doc. 34, Ex. 5, A-0567]. However, the "complementary surfaces configured to nest together" limitation remained, which is now central to the issue at hand.

### C. Jeevony's Product and the Instant Case

Plaintiff Jeevony sells a magnetic dryer vent attachment, pictured below, that contains a flexible exhaust dust and two mounting substrates with flat surfaces. [Doc. 1, ¶ 20, 21]. Jeevony primarily sells this product on Amazon and received notice through Amazon's Patent Evaluation program that Kelley filed a proceeding alleging patent infringement. [*Id.* ¶ 25]. In response, Jeevony filed this lawsuit seeking declaratory judgments that its product does not infringe the '855 Patent and that the '855 Patent is invalid due to indefiniteness.



In their counterclaim, Kelley and MagVent allege that Jeevony makes, markets, and sells products that infringe on one or more claims of the '855 Patent.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Jeevony has filed a motion to dismiss for failure to state a claim. In the motion, Jeevony argues that Kelley is asserting infringement over subject matter beyond the scope of his patent, as his patent only covers "nested" surfaces, and Jeevony's product contains flat, non-nested surfaces. Jeevony also asks the Court to strike

Kelley's affirmative defenses.

## II. MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). The same pleading standard applies to claims of patent infringement. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1334 (Fed. Cir. 2016).

### B. Analysis

Jeevony argues that Kelley is barred from claiming infringement due to prosecution history estoppel as he excluded flat substrate surfaces from the scope of his patent during its prosecution. Kelley contends that Jeevony is asking the Court to engage in claim construction which is inappropriate at this stage of litigation, and which is factually unsupported as it requires the Court to read limitations into the claim which were removed during prosecution.

The patent infringement analysis involves a two-step process: "[t]he court must first interpret the claim and determine the scope and the meaning of the asserted patent claims, and then compare the properly construed claims to the allegedly infringing device." *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 355 F.3d 1361, 1367 (Fed. Cir. 2004) (citation omitted). If a court is required to use extrinsic evidence to construe the meaning of claim terms and perform an infringement analysis to resolve a motion to dismiss, the motion should be denied, because this type of analysis is inappropriate at the pleading stage. *See, e.g., Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018); *cf. UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984 (Fed. Cir. 2024) (holding that a court may undergo claim construction when adjudicating a motion to dismiss when it is decided on intrinsic evidence alone).

But Jeevony argues that claim construction is not needed here, as it claims the prosecution history confirms Kelley has stated that "nesting" surfaces are not flat surfaces. If that is indeed the case, the Court may grant the motion to dismiss. *Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154, 1160–61 (Fed. Cir. 2019) (affirming the district court's dismissal under 12(b)(6) based on prosecution history estoppel). Thus, though Kelley argues that it is improper for the Court to consider Jeevony's motion to dismiss before the claim construction hearing, the Court may at this stage properly consider whether the scope of the prosecution history applies to estop Kelley from asserting infringement. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) ("Questions relating to the application and scope of prosecution history estoppel thus fall within the exclusive province of the court," and "determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are questions of law for the court, not a jury, to decide.").

6

"Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1322 (Fed. Cir. 2013). Specifically, it bars a patent owner from asserting equivalents for a claim element when that assertion contradicts statements made to the patent examiner in the course of obtaining the patent. *See Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380 (Fed. Cir. 2019).

To invoke prosecution history estoppel, the prosecution history must show "a clear and unmistakable surrender of subject matter." *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003); *Sandisk Corp. v. Memorex Prods.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005) (holding that an ambiguous disclaimer will not suffice to limit a claim). To determine whether there has been a clear and unmistakable surrender, "[t]he relevant inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007) (citations omitted).

Here, there was not a "clear and unmistakable surrender" of flat-surfaced substrates in the patent prosecution history. Upon review of the claim language on the '855 Patent in comparison to its predecessors, it appears that flat surfaces may be allowed under the '855 Patent. The '855 Patent removed the limitation requiring outwardly protruding and inwardly recessed surfaces while keeping the requirement that the "complementary surfaces configured to nest together." So, while complimentary nesting surfaces are still required, outward protrusions and inward recessions are not, unless the term "nest" demands such physical structures. As the phrase "complementary surfaces configured to nest together" is subject to multiple reasonable interpretations as evinced

7

through the parties' briefings, it does not support a finding that there was a clear surrender of flat surfaces, and it demonstrates that claim construction is necessary on this term.[3]

Jeevony argues that the figures in the '855 Patent make clear that flat surfaces cannot be nested. Figure 6 depicts two curved substrates, one curved inward and one curved outward. The patent describes this as "an alternate coupling geometry where the two halves of the coupling are nested cones." Figures 1 and 2 depict flat surfaced substrates, and the written description does not describe either figure as "nested." But simply because Figure 6 is described as "nested cones" does not mean that Figures 1 and 2 are not nested. The patent does not describe Figures 1 and 2 as either nested or non-nested, and it would not make sense for Kelley to include non-nested substrates when the patent demands nesting.

Jeevony also highlights Kelley's initial patent application, 12/804,691, which included a claim limitation for "smooth magnetic surface areas" and was rejected by the USPTO, as confirmation that flat surface connections are beyond the scope of patentable subject matter. But this initial application did not include the "complimentary surfaces that nest" limitation. Claim construction for the term "complimentary surfaces that nest" will determine whether smooth magnetic surfaces can be complimentary and nest, and consequently whether smooth magnetic surface areas are beyond the scope of Kelley's patent.

Finally, Jeevony contends that during prosecution, Kelley differentiated between his patent and prior art by stating that the prior art, consisting of flat surfaces, contained no nesting. The specific segment of the prosecution history is repeated here:

---

[3] Further, as Kelley relies on extrinsic evidence (a dictionary definition) to define this term, claim construction at the motion to dismiss stage is not appropriate.

(f) "*said complementary protruding and recessed surfaces adapted to nest together upon magnetic attraction of said first and second mounting substrates with said annular inner peripheral edges of said first and second magnets substantially aligned*";

**Pichotta**: No nesting, and inner perimeters of openings (15a, 16a) do not align. Openings (15a, 16a) are of different diameters to account for "misalignment".  See Pichotta at ¶[0059].

**Irey**: No nesting.

[Doc. 34, Ex. 5, A-0285].  This discussion relates to an earlier version of the patent, when it included the limitation requiring outwardly protruding and inwardly recessed surfaces; this limitation does not appear in the '855 Patent.  While prosecution history estoppel can extend from a parent application to subsequent related patents, "arguments made in a related application do not automatically apply to different claims in a separate application." *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1323 (Fed. Cir. 2013) (quoting *Biogen, Inc. v. Berlex Labs., Inc.,* 318 F.3d 1132, 1139 (Fed. Cir. 2003)). Generally, "the prosecution history regarding a *particular limitation* in one patent is presumed to inform the later use of *that same limitation* in related patents, unless otherwise compelled." *Id.* (emphasis added) (citations omitted).  Kelley's attempt to differentiate between his patent and the prior art on a claim limitation that is not part of the patent at issue is not applicable here.  And though Kelley's response states that there is no nesting in Pichotta and Irey's patents which both contain flat surfaces, because the disclaimer is specifically related to protruding and recessed surfaces, it is possible to interpret this discussion as arguing that Pichotta and Irey's prior art does not show nesting of protruding and recessed surfaces.

Jeevony's motion asks the Court to rely solely on the prosecution history to confirm that the '855 Patent does not cover flat surfaces.  But the prosecution history is not unmistakably clear that that is the case, and the Court must undergo a claim construction analysis to determine whether

9

Kelley foreclosed all rights to flat nesting surfaces. Therefore, the Court must deny the motion to dismiss Kelley's counterclaim.

## III. MOTION TO STRIKE AFFIRMATIVE DEFENSES

### A. Legal Standard

Federal Rule of Civil Procedure 12(f) permits a court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). However, "[b]ecause striking a portion of a pleading is a drastic remedy, such motions are generally viewed with disfavor and are rarely granted." *AT&T Global Info. Solutions Co. v. Union Tank Car Co.,* No. C2–94–876, 1997 WL 382101, at *1 (S.D. Ohio Mar.31, 1997) (citing *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953). A motion to strike should be granted "only when required for the purposes of justice" and when "the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp.,* 201 F.2d at 822.

### B. Analysis

Jeevony argues that Kelley's three affirmative defenses must be stricken because they fail to meet the pleading requirements as described in *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007). *Twombly* requires that a Complaint provide factual allegations sufficient "to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Id.* at 570. But the Supreme Court does not apply this pleading standard to affirmative defenses, and neither does the Sixth Circuit. Instead, the Sixth Circuit allows an affirmative defense to be pled "in general terms" which will be held as sufficient "as long as it gives plaintiff fair notice of the nature of the defense." *Lawrence v. Chabot*, 182 F. App'x. 442, 456 (6th Cir. 2006) (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1274).

Kelley's first affirmative defense asserts that the Complaint fails to state a cause of action upon which relief can be granted. Federal Rule 12(h)(2)(A) allows a party to raise "failure to state a claim" in "any pleading allowed or ordered under Rule 7(a)," which includes the Answer. *Sony/ATV Music Pub., LLC v. D.J. Miller Music Distributors, Inc.,* No. 3:09–CV–01098, 2011 WL 4729807, at *5 (M.D. Tenn. Oct. 7, 2011). Courts in this Circuit routinely accept "failure to state a claim" as an affirmative defense. *Id.* (collecting cases). Because motions to strike defenses are disfavored and this defense provides Jeevony fair notice, the Court declines to strike the first affirmative defense.

Kelley's second affirmative defense asserts that the Complaint fails to plead facts sufficient to show non-infringement or invalidity. This is essentially the same defense as the first affirmative defense, and the Court will also decline to strike it as it provides fair notice of the nature of the defense.

Kelley's third affirmative defense asserts that unclean hands bars Jeevony's complaint. Jeevony argues that the defense must be plead with particularity under Federal Rule 9(b) because it sounds in fraud. This overstates the doctrine. Although unclean hands may, in some cases, overlap with inequitable conduct, it is not limited to fraud-based theories and may rest on litigation or business misconduct. *See, e.g., Gilead Sciences, Inc. v. Merck & Co.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (unclean hands premised on business and litigation misconduct). There are no indications here that this defense is based on fraud or misrepresentations, and therefore it need not be pled with particularly pursuant to Rule 9(b). *See Sony/ATV,* 2011 WL 4729807, at *5 (holding affirmative defenses that stated claims are barred by the doctrine of unclean hands provided plaintiff with fair notice of the nature of the defense). The defense need only satisfy Rule 8's fair-notice standard.

Even so, the defense fails as a matter of law. The doctrine of unclean hands applies only where the plaintiff's misconduct bears an "immediate and necessary relation" relation to the equitable relief sought. *Gilead Scis. Inc. v. Merck & Co., Inc.*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). It does not operate to invalidate a patent or to defeat a claim of non-infringement. *W. E. Plechaty Co. v. Heckett Eng'g, Inc.*, 145 F. Supp. 805, 806–07 (N.D. Ohio 1956).

Kelley's pleading does not allege any misconduct connected to the procurement, scope, or enforcement of the patent rights at issue. Instead, it asserts unclean hands as a complete bar to the case. That defense is not legally cognizable as pled. Accordingly, Kelley's third affirmative defense is **STRICKEN.**

## IV. CONCLUSION

For the reasons stated above, Jeevony's motion [Doc. 34] is **GRANTED IN PART** as to the third affirmative defense and **DENIED IN PART** as to the counterclaim and first and second affirmative defenses.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge